**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND**

| | | |
|---|---|---|
| **LAURA BLEVINS,** | : | |
| 5507 North Ridge West | : | |
| Ashtabula, OH 44004 | : | Case No.: 1:20-cv-2453 |
| | : | |
| Plaintiff, | : | JUDGE |
| | : | |
| vs. | : | MAGISTRATE JUDGE |
| | : | |
| **ATRIUM LIVING CENTERS, INC.**, | : | |
| c/o Registered Agent: | : | **Jury Demand Endorsed Hereon** |
| CT Corporation System | : | |
| 4400 Easton Commons Way, Suite 125 | : | |
| Columbus, OH 43219 | : | |
| | : | |
| and | : | |
| | : | |
| **ORION AUSTINBURG LLC,** | : | |
| c/o Registered Agent: Mark P. McGrievy | : | |
| 28601 Chagrin Blvd., Suite 500 | : | |
| Cleveland, OH 44122 | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

NOW COMES Plaintiff Laura Blevins ("Plaintiff") and proffers this Complaint for damages against Defendant Atrium Living Centers, Inc. and Defendant Orion Austinburg LLC ("Defendants").

## JURISDICTION AND VENUE

1.     This action is brought pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA") and the Ohio Laws Against Discrimination, R.C. Chapter 4112 ("Chapter 4112").

2.     Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e), which provide for original jurisdiction of Plaintiff's claims arising under the laws of the United States and over actions to secure equitable and other relief.

3.     This Court also has jurisdiction over Plaintiff's claims under the statutory laws of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4.     Venue is proper pursuant to 28 U.S.C. § 1391, because Plaintiff entered into an employment relationship with Defendants and performed her job duties for Defendants in Ashtabula County, Ohio in the Eastern Division of the Northern District of Ohio, and Defendants are doing and have done substantial business in the Northern District of Ohio.

## THE PARTIES

5.     Plaintiff Laura Blevins is an individual, a United States Citizen, and a resident of Ashtabula County.

6.     Defendant Atrium Living Centers, Inc. is a foreign corporation registered to do business in Ohio and conducting business in the Northern District of Ohio.

7.     Defendant Orion Austinburg LLC is a foreign limited liability company registered to do business in Ohio and conducting business in the Northern District of Ohio.

8.     At all times relevant herein, Plaintiff was an "employee" of Defendants as that term is defined by the ADA and Ohio law.

9.     At all times relevant herein, Defendants were "employers" and/or "joint employers as that term is defined by the ADA, Ohio law, and the case law interpreting those statutes.

## FACTUAL BACKGROUND

10.     Plaintiff began her employment with Defendants in or around March 2016 in the position of Director of Social Services.

2

11.     Upon information and belief, Defendants operate nursing home and rehabilitation facilities located throughout Ohio, Kentucky, Wisconsin, and Michigan.

12.     Throughout Plaintiff's employment, she worked at the Austinburg Nursing Home and Rehabilitation Center, located at 2026 State Route 45, Austinburg, OH 44010.

13.     In her role as Director of Social Services, Plaintiff was responsible for working one-on-one with patients, developing care plans, and monitoring patient progress.

14.     Plaintiff is an individual with a disability. Plaintiff has been diagnosed with Chronic Obstructive Pulmonary Disease ("COPD").

15.     Plaintiff's COPD causes her to experience shortness of breath, wheezing, and upper respiratory issues, among other symptoms.

16.     Plaintiff periodically experiences an exacerbation of the symptoms of her COPD, which requires her to seek treatment.

17.     On or about April 14, 2020, Plaintiff experienced a flare-up of the symptoms associated with her COPD.

18.     Plaintiff notified her supervisor, Administrator Lilian Sharp, that she was not feeling well and that she would not be into work that day. Plaintiff explained she believed she had an upper respiratory infection and that she had been experiencing trouble breathing.

19.     Ms. Sharp instructed Plaintiff to relay her symptoms to Director of Nursing, Katie Chorba, and Plaintiff contacted Ms. Chorba to inform her of the same.

20.     Ms. Chorba stated that, due to the rise in COVID-19 cases in Ohio, Defendants required any employee with COVID-like symptoms to remain off of work for at least 7 days. Ms. Chorba also informed Plaintiff that she would be required to obtain a doctor's release to return to work thereafter.

21.     Plaintiff treated with her physician on or about April 20, 2020, the day before she was scheduled to return to work after her 7-day absence. Plaintiff's physician advised her to remain off work for an additional 7 days because her symptoms had not improved.

22.     Plaintiff informed Ms. Sharp of her physician's instructions, and Defendants approved Plaintiff's request for an additional period of leave.

23.     Plaintiff attended a follow-up appointment with her physician on or about April 27, 2020. Plaintiff's physician instructed her to remain off work for another 2 weeks – through May 12, 2020 – because her symptoms had still not improved.

24.     Plaintiff's physician was further concerned about her return to work in a public setting, as her COPD placed her at high risk of severe illness if she was exposed to COVID-19.

25.     That same day, Plaintiff called Ms. Sharp to speak with her about her physician's instructions. When Plaintiff began explaining her physician's concerns about exposure to COVID-19, Ms. Sharp interrupted Plaintiff, stated that Defendants did not have COVID-19 in the building, and abruptly ended the call.

26.     Moreover, Plaintiff had expressed concern prior to her medical leave about Defendants' response to the ongoing COVID-19 pandemic. Plaintiff frequently noticed that employees at Defendants' Austinburg facility were not practicing social distancing, and when she heard Defendants' Austinburg facility had discussed opening a COVID-19 wing for infected patients, she voiced her concerns about meeting with sick patients to David Heller.

27.     Mr. Heller informed Plaintiff that she could use a computer to meet with these patients remotely via the Zoom videoconferencing application.

28.     In or around late April or early May 2020, Plaintiff received several reports from coworkers who informed her that her medical leave had "ruffled some feathers."

29.     Specifically, Plaintiff received reports from coworkers who stated that her supervisor, Ms. Sharp, was complaining about performing Plaintiff's job duties and indicated that her department did not know how to come to work.

30.     On or about May 5, 2020, Plaintiff received an email from Sandy Green, Benefits Coordinator, requesting that she apply for leave pursuant to the Family Medical Leave Act. ("FMLA").

31.     Plaintiff and her physician promptly submitted certification requesting FMLA leave, and Plaintiff was approved to take continuous FMLA leave for her COPD through June 14, 2020.

32.     Plaintiff treated with her physician on or about June 12, 2020 prior to her expected return to work.  Plaintiff's physician continued to express concerns about Plaintiff returning to work in a medical building that was accessible to members of the public while the COVID-19 pandemic remained ongoing, and Plaintiff's physician instructed her to remain off work through August 31, 2020.

33.     Plaintiff's physician promptly provided updated FMLA paperwork to Ms. Green stating the same. Plaintiff also emailed Ms. Sharp to inform her of her physician's instructions.

34.     Plaintiff's physician also indicated in the paperwork that Plaintiff could return to work immediately if she was permitted to perform her job duties remotely, but that if this was not permitted, she needed to remain out of the building until August 31, 2020.

35.     Upon receiving Plaintiff's FMLA paperwork, Ms. Green informed Plaintiff that her FMLA paperwork needed to be backdated to April 14, 2020—the first day of her absence.  Ms. Green informed Plaintiff that her FMLA leave would expire after the expiration of 12 weeks—on or about July 7, 2020.

36.     On or about July 2, 2020, Plaintiff sent Ms. Green an email requesting an accommodation for her COPD.

37.     Specifically, Plaintiff indicated that her physician instructed her to remain at home because her COPD places her at a higher risk of severe illness if exposed to COVID-19.

38.     Plaintiff requested a reasonable accommodation in the form of a temporary work-form-home arrangement.  She further stated that if that was not feasible, then she would like to work from home part-time, and to come into the office only to perform tasks that Defendants did not believe she could perform remotely. Alternatively, Plaintiff stated that if neither of those options were feasible, she would like to request a brief extension of her unpaid medical leave through August 31, 2020.

39.     Plaintiff inquired as to whether she needed to complete accommodation paperwork or take any additional steps for Defendants to consider her reasonable accommodation requests.

40.     Plaintiff received no response to this email.

41.     On July 6, 2020, Plaintiff sent a follow-up email to Ms. Green regarding the status of her request for a reasonable accommodation.

42.     Ms. Green responded to Plaintiff's email, stating that Plaintiff would need to return to work after the expiration of her FMLA leave "without any restrictions."

43.     Plaintiff received no further communication from Defendants until she received a letter dated July 15, 2020, terminating her employment.

44.     Defendants failed entirely to participate in a good faith interactive process to determine an accommodation that would allow Plaintiff to perform the essential functions of her job.

## COUNT I
### ADA – Disability Discrimination

45.     All of the preceding paragraphs are realleged as if fully rewritten herein.

46.     At all times relevant herein, Plaintiff was disabled within the meaning of 42 U.S.C. § 12102.

47.     Plaintiff was an otherwise qualified individual with a disability within the meaning of 42 U.S.C. § 12102.

48.     Defendants knew or had reason to know that Plaintiff suffered from a disability, regarded her as disabled, and/or was aware of Plaintiff's record of disability.

49.     Defendants terminated Plaintiff's employment on the basis of her disability, perceived disability, and/or record of disability.

50.     Defendants discriminated against Plaintiff because of her disability by failing to accommodate Plaintiff; failing to engage in an interactive process; terminating Plaintiff's employment; and/or otherwise discriminating against her in the terms, privileges, and conditions of her employment.

51.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and loss of salary, benefits, and other terms, privileges, and conditions of employment for which Defendants are liable.

52.     Defendants' conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT II
### R.C. § 4112 – Disability Discrimination

53.     All of the preceding paragraphs are realleged as if fully rewritten herein.

54.     At all times relevant herein, Plaintiff suffered from an impairment within the meaning of Section 4112.01(A) of the Ohio Revised Code.

55.     At all times relevant herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01.

56.     Defendants knew or had reason to know that Plaintiff suffered from a disability, regarded her as disabled, and/or had a record of disability.

57.     Defendants discriminated against Plaintiff because of her disability by failing to accommodate Plaintiff; failing to engage in an interactive process; terminating Plaintiff's employment; and/or otherwise discriminating against her in the terms, privileges, and conditions of her employment.

58.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendants are liable.

59.     Defendants' conduct was willful, wanton, reckless, and/or malicious for which Defendants are liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT III
### ADA – Failure to Accommodate

60.     All of the preceding paragraphs are realleged as if fully rewritten herein.

61.     At all times relevant herein, Plaintiff was a qualified individual with a disability within the meaning of 42 U.S.C. §12102.

62.     Defendants knew or had reason to know that Plaintiff suffered from a disability.

63.     Plaintiff requested a reasonable accommodation for her disability when she requested a temporary work-from-home arrangement, and/or a part-time work-from-home arrangement, and/or a brief extension of her unpaid medical leave.

64.     Such reasonable accommodations were possible for Defendants to provide and would not have caused Defendants undue hardship.

65.     Defendants violated 42 U.S.C. §12102 by failing to accommodate Plaintiff's disability, failing to engage in an interactive process, terminating Plaintiff's employment, and/or otherwise discriminating against her in the terms, privileges, and conditions of employment.

66.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendants are liable.

67.     Defendants' conduct was willful, wanton, reckless, and/or malicious for which Defendants are liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT IV
### R.C. § 4112 - Failure to Accommodate

68.     All of the preceding paragraphs are realleged as if fully rewritten herein.

69.     At all times relevant herein, Plaintiff was a qualified individual with a disability within the meaning of R.C. §4112.01.

70.     Defendants knew or had reason to know that Plaintiff suffered from a disability.

71.     Plaintiff requested a reasonable accommodation for her disability when she requested a temporary work-from-home arrangement, and/or a part-time work-from-home arrangement, and/or a brief extension of her unpaid medical leave.

72.     Such reasonable accommodations were possible for Defendants to provide and would not have caused Defendants undue hardship.

73.     Defendants violated R.C. § 4112.02 by failing to accommodate Plaintiff's disability, failing to engage in a good faith interactive process to determine an objectively reasonable accommodation for Plaintiff's disability, terminating her employment on the basis of her disability, and/or otherwise discriminating against her in the terms, privileges, and conditions of employment.

74.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendants are liable.

75.     Defendants' conduct was willful, wanton, reckless, and/or malicious for which Defendants are liable for compensatory damages, punitive damages, and reasonable attorney's fees and costs.

**WHEREFORE**, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, front pay, statutory liquidated damages, compensatory damages, expert witness fees, attorneys' fees and expenses, and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00, and any and all other relief which the Court deems just and appropriate.

Respectfully submitted,

*/s/ Carrie J. Dyer*

Carrie J. Dyer (0090539)
*Carrie@MansellLawLLC.com*
Greg R. Mansell (0085197)
*Greg@MansellLawLLC.com*
Rhiannon M. Herbert (0098737)
*Rhiannon@MansellLawLLC.com*
**Mansell Law, LLC**
1457 S. High St.
Columbus, Ohio 43207
Ph: (614) 610-4134
Fax: (614) 547-3614

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

*/s/Carrie J. Dyer*
Carrie J. Dyer (0090539)